# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

No. 23-0739V

| | |
|---|---|
| ROBERT PAVEGLIO,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: April 3, 2025 |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Katherine Edwards*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On May 19, 2023, Robert Paveglio filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered Guillain-Barré syndrome ("GBS") as a result of an influenza ("flu") vaccine he received on October 5, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Although Petitioner has been found entitled to compensation, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a "Motions Day" proceeding. For the reasons set forth below, and after hearing argument

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

from the parties, I find that Petitioner is entitled to compensation in the amount of $145,000.00 for his actual pain and suffering.

## I.    Procedural History

On March 8, 2024, I issued a ruling on entitlement in favor of Petitioner. ECF No. 22. But the parties were unable to agree on an appropriate amount to award Mr. Paveglio for his pain and suffering, and therefore agreed to brief the issue. ECF No. 29. On September 13, 2024, Petitioner filed his brief in support of damages ("Mot."), and Respondent filed a Response on October 28, 2024 ("Opp."). ECF Nos. 30-31. I heard arguments from both parties during a Motions' Day Damages hearing held on March 28, 2025.

## II.   Relevant Medical History

A complete recitation of the facts can be found in the Petition, declarations, the parties' respective pre-hearing filings, and in Respondent's Rule 4(c) Report.

In brief summary, Mr. Paveglio was 78 years old at the time he received the flu vaccine at Endocrinology - Great Neck located in Great Neck, New York, on October 5, 2020. Ex. 1 at 15. His past medical history included chest pain, right upper quadrant pain, diabetes mellitus, hypertension, hyperlipidemia, left knee pain, localized osteoarthritis of the lower leg, and left knee pain. Ex. 1 at 13.

On October 29, 2020 (24 days after vaccination), Mr. Paveglio went to North Shore University Emergency Department with a complaint of progressive bilateral leg weakness that began two weeks prior. Ex. 4 at 370. Petitioner reported that he had fallen the previous day after his legs "gave out." *Id*. Mr. Paveglio also reported that he had received his flu vaccination three weeks prior around the time when his bilateral leg weakness began. *Id*. The provider determined that Mr. Paveglio was a "fall with harm risk" and subsequently admitted Petitioner to neurology. *Id*. at 371-73.

During a neurology consult, Mr. Paveglio's differential diagnoses included mixed-picture GBS and transverse myelitis. Ex. 4 at 383. The provider ordered MRIs of the thoracic and lumbar spine and ordered physical therapy. *Id*. The provider also noted that a lumbar puncture may be necessary to rule out GBS if the MRIs were negative. *Id*.

On October 30, 2020, Mr. Paveglio underwent a lumbar puncture and cerebral spinal fluid ("CSF") was obtained. Ex. 4 at 435. The CSF analysis demonstrated albuminocytological dissociation with a protein level of 108, consistent with GBS. *Id*. at 437. The attending neurologist diagnosed Mr. Paveglio with acute inflammatory

demyelinating polyradiculopathy ("AIDP") and ordered Petitioner to begin IVIG treatments. *Id*. at 440.

Mr. Paveglio received a total of four IVIG treatments between October 31 and November 3, 2020. *Id*. at 495. He tolerated the IVIG treatments well and reported feeling stronger following his treatments. *Id*. at 459. Mr. Paveglio was evaluated by occupational therapy and PT and was recommended for discharge with outpatient PT. *Id*. at 464. Mr. Paveglio was discharged to his home on November 3, 2020. *Id*. at 465.

After discharge, Mr. Paveglio went for an initial outpatient PT evaluation on November 10, 2020. Ex. 13 at 164. He reported pain in his legs, which he rated as a 6/10. *Id*. The physical therapist assessed Mr. Paveglio's condition as bilateral lower extremity weakness and gait instability, secondary to GBS, and noted that Petitioner's rehab potential was good. *Id*. Mr. Paveglio completed a total of forty-four (44) PT sessions between November 10, 2020, and April 26, 2021. *Id*. at 13.

On January 21, 2021, Mr. Paveglio had his first neurology appointment since his hospitalization discharge. Ex. 5 at 13. He reported that he had a good return of strength since his treatment. *Id*. Upon exam, Daniel Rubin, M.D., noted that Petitioner's gait was slightly unsteady, but that he had full strength in his limbs. *Id*. at 14.

Mr. Paveglio returned to neurology on May 25, 2021, and reported that his gait was a "little shaky," but that he was using his home exercise bike. Ex. 5 at 11. Upon exam, Dr. Rubin noted that Petitioner had a trace right knee jerk, that the remaining deep tendon reflexes were absent, and that petitioner's gait was "mildly wide based." *Id*.

On February 10, 2022, Mr. Paveglio had his final appointment with neurology. *Id*. at 9. Dr. Rubin noted that Petitioner continued to show improved strength, advised him to continue his exercise program and glycemic control, and to follow up in one year.

### III.   The Parties' Arguments

#### a. Petitioner

In his brief, Mr. Paveglio explained that he suffered from GBS, the treatment for which resulted in a five-day hospitalization, four days of IVIG, a spinal tap, an MRI, and 44 PT sessions over a 24-week period. Mot. at 6. He stated that the total duration of his pain and suffering was at least 67 weeks. *Id.* Mr. Paveglio stated that during these 67 weeks, he suffered symptoms of his GBS including absent reflexes and gait dysfunction." *Id*. Petitioner argues that based on the facts and circumstances of his case, including

supportive case law, he is entitled to an award of $160,000.00 for his past pain and suffering.

Petitioner cited to four cases in support of his claim for past pain and suffering: (1) *Robinson v. Sec'y of Health & Human Servs.*, No. 18-088V, 2020 WL 5820967 at *10 (Fed. Cl. Spec. Mstr. Agu. 27, 2020) (awarding $160,000.00 in actual pain and suffering), (2) *Gruba v. Sec'y of Health & Human Servs.*, No. 19-1157V, 2021 WL 1925630 (Fed. Cl. Spec. Mstr. Apr. 13, 2021) (awarding $165,000.00 in pain and suffering), (3) *Gross v. Sec'y of Health & Human Servs.*, No. 19-835, 2021 WL 2666685 (Fed. Cl. Spec. Mstr. Mar. 11, 2021) (awarding $160,000.00 in pain and suffering), and (4) *W.B. v. Sec'y of Health & Human Servs.*, No. 18-1634, 2020 WL 5509686 (Fed. Cl. Spec. Mstr. August 7, 2020) (awarding $155,000.00 in pain and suffering).

### b. Respondent

Respondent has argued that the cases cited by Petitioner to support his pain and suffering demand "are factually distinguishable and make clear that he [Petitioner] should be awarded less than the amounts in his cited cases." Opp. at 5-6. However, Respondent has also argued that "[t]he privacy provisions of the Vaccine Act make a true head-to-head comparison of this case to others difficult, but respondent has reviewed a number of conceded flu/GBS cases and considers $115,000.00 to be an appropriate pain and suffering award given the facts of this case." Opp. at 8. Respondent otherwise did not cite to any specific reasoned decision in support of his proposed award.

### IV. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical

4

formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### V. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of his injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his GBS. Therefore, my analysis focuses primarily on the severity and duration of Petitioner's injury.

Petitioner's medical records reveal a moderate case of GBS, with a treatment course that was not exceedingly intrusive compared to other cases (even though GBS itself involves a level of treatment of a higher magnitude than many Program injuries). Mr. Paveglio's treatment included a five-day inpatient hospitalization, a lumbar puncture, and four IVIG treatments, and his records document a mild course, as he quickly regained his strength without receiving inpatient rehabilitation and could ambulate with assistance when discharged from the hospital. Following his discharge, Mr. Paveglio attended 44 outpatient PT sessions for a total of five and half months. During his last PT session on April 26, 2021, the therapist noted that Mr. Paveglio was tolerating treatment well but would need further therapy to return to his prior level of function. Petitioner continued to follow up with his neurologist through February 2022, one year and four months after his vaccination, at which time his neurologist noted that Petitioner showed improved strength. Although he was recommended to return for a follow up in one year, there are no additional records to show that Mr. Paveglio returned to his neurologist.

Petitioner cited four cases in his brief, with pain and suffering awards ranging from $155,000.00 to $165,000.00. Mot. at 5-6. Overall, these comparable cases were more helpful to my determination than what Respondent offered - nothing. The most helpful of Petitioner's cases was *Robinson v. Sec'y of Health & Human Servs.*, No. 18-0088V, 2020 WL 5820967, *2-3 (Fed. Cl. Spec. Mstr. Aug. 27, 2020), where the petitioner was awarded $160,000.00 in pain and suffering after a six-day hospital stay, five IVIG infusions, and 20 sessions of outpatient physical therapy after discharge. That petitioner also endured several diagnostic tests, including two lumbar punctures. *Id*. at *2. She also did not require inpatient rehabilitation, recovered quickly, and experienced mild sequela. *Id*. at 2-3. The *Robinson* petitioner, however, endured significant distress at the beginning of her treatment course, as doctors struggled to diagnose her, causing her "to question whether she would survive or not," and her course was complicated by tachycardia. *Id*. at*2, 6. She also experienced disturbances in parenting her young children. Mr. Paveglio, in contrast, was diagnosed and treated quickly, did not suffer significant complications, and did not suffer major life disturbances (such as to parenting or employment), suggesting that a lower award is appropriate.

After considering the entire record and the parties' arguments, I find that **$145,000.00 in compensation for actual pain and suffering** is reasonable and appropriate in this case.

## CONCLUSION

For all of the above reasons, the I award **Petitioner a lump sum payment of $145,000.00, for Petitioner's actual pain and suffering to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of Court is directed to enter judgment in accordance with this Decision.[3]

**IT IS SO ORDERED.**

                                                     **s/Brian H. Corcoran**
                                                     Brian H. Corcoran
                                                     Chief Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.